| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF WINONA | THIRD JUDICIAL DISTRICT<br>Case Type: Property Damage |
| Northern Meat Products, Inc. f/k/a<br>North Star Foods Inc., | Case No. |
| Plaintiff, | SUMMONS |
| v. | |
| Marshall W. Nelson & Associates<br>and Flynn Burner Corporation, | |
| Defendants. | |

THE STATE OF MINNESOTA TO THE ABOVE-NAMED DEFENDANTS:

You are hereby summoned and required to serve upon the attorney for Plaintiff an answer to the Complaint which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the Complaint.

This case may be subject to Alternative Dispute Resolution (ADR) processes under Rule 114 of the General Rules of Practice for District Courts. The Court Administrator or your attorney can provide you with information about ADR options and a list of neutrals available in your area. This notice is provided in accordance with Minn. Stat. § 543.22. Please note that ADR does not affect your obligation to respond to the Summons and Complaint within.



Dated: May 27, 2010

GREENE ESPEL P.L.L.P.

_____
Robert J. Gilbertson, Reg. No. 22361X
John W. Ursu, Reg. No. 032257X
Samuel J. Clark, Reg. No. 388955
200 S. Sixth Street, Suite 1200
Minneapolis, MN 55402
BGilbertson@GreeneEspel.com
JUrsu@GreeneEspel.com
SClark@GreeneEspel.com
(612) 373-0830

*Attorneys for Northern Meat Products, Inc., f/k/a North Star Foods*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subdivision 2, to the party against whom the allegations in this pleading are asserted.

_____
Robert J. Gilbertson

| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF WINONA | THIRD JUDICIAL DISTRICT<br>Case Type: Property Damage |

| | |
|---|---|
| Northern Meat Products, Inc. f/k/a<br>North Star Foods Inc., | Case No. |
| Plaintiff, | COMPLAINT |
| v. | |
| Marshall W. Nelson & Associates<br>and Flynn Burner Corporation, | |
| Defendants. | |

For its Complaint against Defendants Marshall W. Nelson & Associates ("Marshall Nelson") and Flynn Burner Corporation ("Flynn"), Plaintiff Northern Meat Products, Inc., formerly known as North Star Foods Inc. ("North Star Foods" or "North Star"), states and alleges as follows:

### INTRODUCTION

1. North Star Foods was, until April 17, 2009, one of southeastern Minnesota's best business success stories. With a long history of serving the meat processing industry, North Star Foods had in recent years become a partner of choice for the nation's leading food companies. Even during a time when the economy generally was weak, North Star was strong, employing, either directly or through labor providers, approximately 250 people. North Star had an excellent relationship with the City of St. Charles and was an involved and productive corporate citizen.

2. On April 17, 2009, however, a fire destroyed North Star's processing facility. The fire started in the ceiling above a "highlighter" oven equipped with burners recommended by Marshall Nelson and Flynn and serviced by Marshall Nelson. The burners were problematic almost from the day they were installed, and Marshall Nelson's post-sale advice and service proved to be negligent and inadequate. On the morning of the fire, a Marshall Nelson technician came to North Star's building to work on the burners and spent over an hour inspecting them and making adjustments to the gas and flames. Very shortly after he left the building, North Star employees observed fire in the ceiling immediately above the highlighter oven on which he had been working.

3. The fire destroyed North Star's facility, disrupted the community, and caused more than $55 million in damages.

## THE PARTIES

4. North Star Foods is a corporation organized and existing under the laws of the State of Minnesota and having its principal place of business at 138 West Circle Drive, St. Charles, MN 55972.

5. Marshall Nelson is a corporation organized and existing under the laws of the State of Wisconsin and having a principal place of business at 4300 North Port Washington Road, Milwaukee, Wisconsin, and an office at 4155 Old Sibley Memorial Highway, Eagan, Minnesota.

6. Flynn is a corporation organized and existing under the laws of the State of New York and having a principal place of business at 425 Fifth Avenue, New Rochelle, New York.

## VENUE

7. Venue is appropriate in this judicial district because North Star Foods is located in Winona County and the operative events relating to this lawsuit occurred in Winona County.

## FACTUAL BACKGROUND

8. Before April 17, 2009, North Star Foods was in the meat-processing business. It operated an 84,000-square foot meat processing facility at 1279 St. Charles Avenue in St. Charles, Minnesota, and by a wide margin was the city's largest private employer and had a major influence on the local St. Charles economy. North Star Foods served national customers such as ConAgra, Tyson, Butterball, Hormel, and Costco Club Stores. Even in a difficult economy, North Star Foods' business was thriving.

9. For several years, North Star Foods' St. Charles plant included a highlighter oven in what plant personnel referred to as the Checker Room (named for the Checker Machine Company-manufactured steam oven that anchored that room's operations). The highlighter oven was located at the exit end of the Checker steam oven. The highlighter oven was used on certain products produced in the steam oven to give the outside of the product an "oven roasted" look and increase the product's aesthetic appearance.

3

10. North Star Foods experienced problems with the burners associated with the highlighter oven, and sought the assistance of specialists to help solve those problems. North Star turned to Marshall Nelson, which held itself out as having great experience and expertise in process heating and control engineering.

11. Marshall Nelson recommended, and North Star bought and installed, a different type of burner for the highlighter oven. After the installation, North Star experienced even more problems with the burners.

12. In late 2008 and early 2009, Marshall Nelson recommended that North Star Foods buy another new type of burner, this one manufactured by Flynn. Flynn held itself out as having great experience and expertise in bakery burners and accessories.

13. Marshall Nelson and Flynn representatives visited North Star's facility in early 2009, reviewed the highlighter setup in the Checker room, and recommended that the existing highlighter burners be replaced with burners manufactured by Flynn.

14. North Star accepted that recommendation and bought and installed the Flynn burners approximately two months before the fire.

15. North Star had numerous problems with the new Flynn burners and contacted Marshall Nelson for help. Marshall Nelson representatives talked with North Star employees on the telephone about these problems and visited North Star's facility to adjust and maintain the burners. The burners continued to have problems.

16. On the morning of Friday, April 17, 2009, Marshall Nelson visited North Star's facility again to work on the highlighter burners. Marshall Nelson's technician serviced the burners and made adjustments to the gas and flames.

4

17. Less than a half hour after Marshall Nelson's technician left North Star's building, North Star employees observed fire in the ceiling directly above the highlighter oven in the Checker room. They radioed others to notify them of the fire, and the plant was evacuated. Some North Star employees stayed in the building and tried to fight the fire. Neither their heroic efforts nor those of the fire fighters who responded to the site were enough to contain the fire, and the building was destroyed. Fortunately, everyone was able eventually to get out.

18. There was immediate and great concern that the fire would compromise the building's ammonia refrigeration system and potentially cause a catastrophic and fatal ammonia leak. North Star employees responsible for the refrigeration system stayed on site and, at great risk to themselves, worked to take the system down in a way that succeeded in avoiding that type of larger catastrophe from occurring.

19. As a direct result of the fire, North Star Foods suffered property damage and business loss exceeding $55 million.

## COUNT I
### (Negligence)

20. North Star Foods realleges paragraphs 1-19 above as if set forth fully herein.

21. Marshall Nelson owed North Star Foods a duty to act with reasonable care. This included a duty to perform work in a careful and workmanlike manner and to provide adequate warnings and instructions to those who bought its products and used them as intended or in a way that Marshall Nelson could have reasonably anticipated.

5

22. Flynn owed North Star Foods a duty to act with reasonable care. This included a duty to perform work in a careful and workmanlike manner and to provide adequate warnings and instructions to those who bought its products and used them as intended or in a way that Flynn could have reasonably anticipated.

23. North Star Foods was an ordinary and foreseeable user of the Flynn burners that North Star bought from Marshall Nelson.

24. Marshall Nelson breached its duty and was negligent in (a) its advice to North Star Foods about how to solve the problems with the highlighter's burners, (b) its recommendation of the burners that North Star purchased and installed two months before the fire, (c) its performance of service work on the highlighter's burners, including but not limited to its work on the morning of the fire, (d) its sale of a defective and unreasonably dangerous product, and (e) its failure to warn, instruct, and advise North Star Foods about the safe installation, use, and maintenance of the burners. Marshall Nelson was negligent in other ways as well.

25. Flynn breached its duty and was negligent in (a) its advice to North Star Foods about how to solve the problems with the highlighter's burners, (b) its recommendation of the burners that North Star purchased and installed two months before the fire, (c) its sale of a defective and unreasonably dangerous product, and (d) its failure to warn, instruct, and advise North Star Foods about the safe installation, use, and maintenance of the burners. Flynn was negligent in other ways as well.

26. As a direct and proximate result of the defendants' negligence, North Star Foods suffered damages in an amount in excess of $50,000.

## COUNT II
### (Strict Liability)

27. North Star Foods realleges paragraphs 1-26 above as if set forth fully herein.

28. Flynn is in the business of manufacturing burners for commercial ovens.

29. Marshall Nelson and Flynn are in the business of selling and/or distributing burners for commercial ovens.

30. North Star Foods purchased Flynn burners from Marshall Nelson on the advice and recommendations of Flynn and Marshall Nelson.

31. Upon information and belief, Flynn knew the condition of its burners and the risks involved in that condition at the time the burners were designed, manufactured, and sold.

32. Upon information and belief, Marshall Nelson knew the condition of the burners and the risks involved in that condition at the time the burners were sold.

33. The burners purchased by North Star Foods were expected to and did in fact reach North Star Foods without substantial change in their condition.

34. Flynn and Marshall Nelson had a duty to refrain from designing and selling burners that were unreasonably dangerous to users when either used as intended or used in a way that they could have reasonably anticipated.

35. North Start Foods did, in fact, use the burners as intended or in a way that Flynn and Marshall Nelson could reasonably have anticipated.

36. Flynn and Marshall Nelson breached their duty.

7

37. Flynn's and Marshall Nelson's sale of burners that were unreasonably dangerous was a direct and proximate cause of the fire at the North Star Foods facility.

38. Marshall Nelson and Flynn are strictly liable to North Star Foods for damages in excess of $50,000.

## COUNT III
### (Breach of Express Warranty)

39. North Star Foods realleges paragraphs 1-38 above as if set forth fully herein.

40. Marshall Nelson and Flynn are merchants in goods such as the Flynn burners that North Star Foods bought two months before the fire.

41. A few months before the fire, Marshall Nelson and Flynn representatives visited the North Star Foods facility, reviewed the setup in the Checker Room, and examined North Star's highlighter oven and intended use of the burners.

42. After conducting their review, Marshall Nelson and Flynn each recommended the Flynn burners and represented that they would be appropriate and safe for North Star Foods' facility and intended use.

43. North Star Foods did, in fact, rely upon the skill, judgment, and recommendation of Marshall Nelson and Flynn when deciding to purchase the Flynn burners.

44. Marshall Nelson's and Flynn's representations became part of the basis of the bargain between the parties with respect to the burners.

45.   Therefore, through their words and conduct, Marshall Nelson and Flynn created an express warranty.

46.   The Flynn burners were not, in fact, suitable for North Star Foods' facility and intended use.

47.   Marshall Nelson and Flynn therefore breached their express warranties to North Star Foods.

48.   North Star Foods provided notice to Marshall Nelson and Flynn within a reasonable time.

49.   As a direct and proximate result of Defendants' breach of their express warranties, North Star Foods suffered damages in an amount in excess of $50,000.

## COUNT IV
### (Breach of Implied Warranty)

50.   North Star Foods realleges paragraphs 1-49 above as if set forth fully herein.

51.   Marshall Nelson and Flynn had reason to know, at the time of contracting, the particular purpose for which North Star Foods required the burners and that North Star Foods was relying on Marshall Nelson and Flynn to select and furnish a suitable burner.

52.   North Star Foods did, in fact, rely upon the skill, judgment, and recommendation of Marshall Nelson and Flynn when deciding to purchase the Flynn burners.

53. The implied warranty of fitness for a particular purpose therefore arose between the parties.

54. Through the acts and omissions described above, Marshall Nelson and Flynn breached that warranty.

55. North Star Foods provided notice to Marshall Nelson and Flynn within a reasonable time.

56. As a direct and proximate result of Defendants' breach of their implied warranties, North Star Foods suffered damages in an amount in excess of $50,000.

## JURY DEMAND

57. North Star Foods demands a jury trial for all claims and issues so triable in this case.

## PRAYER FOR RELIEF

WHEREFORE, North Star Foods prays for judgment in its favor and against Defendants as follows:

A. Judgment for North Star Foods and against Defendants in an amount in excess of $50,000, plus pre-judgment and post-judgment interest.

B. Awarding North Star Foods its costs and disbursements incurred herein.

C. Granting North Star Foods such other, different, or further relief as may be just and equitable.

Dated: May 27, 2010

GREENE ESPEL P.L.L.P.

By *[signature]*
Robert J. Gilbertson, Reg. No. 22361X
John W. Ursu, Reg. No. 032257X
Samuel J. Clark, Reg. No. 388955
200 S. Sixth Street, Suite 1200
Minneapolis, MN 55402
BGilbertson@GreeneEspel.com
JUrsu@GreeneEspel.com
SClark@GreeneEspel.com
(612) 373-0830

*Attorneys for Northern Meat Products, Inc., f/k/a North Star Foods*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements and reasonable attorney and witness fees may be awarded pursuant to Minn. Stat. § 549.211, subdivision 2, to the party against whom the allegations in this pleading are asserted.

*[signature]*
Robert J. Gilbertson